WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
RAYMOND E. PATRICCO, DISTRICT OF COLUMBIA STATE BAR NO. 454792
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-9375

**U.S. COURTS**

**MAR 11 2016**

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROZA SAUL,<br><br>Defendant. | Case No. 1:16-cr-69-BLW<br><br>**RULE 11 PLEA AGREEMENT** |

Rev. November 2015 (General)

## I.  GUILTY PLEA

**A.  Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant, the attorney for the defendant, and the government[1] agree that the defendant will plead guilty to Count One of the Information, which charges the defendant with a Class A misdemeanor of introduction and delivery for introduction into interstate commerce of a food product that was misbranded, in violation of Title 21 U.S.C. §§ 331(a) and 333(a)(1).

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this agreement, the government, under Federal Rules of Criminal Procedure 11(c)(1)(B), will recommend a sentence of probation.

**B.  Oath.** The defendant will be placed under oath at the plea hearing. The government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

## II.  WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

without having that held against the defendant. If the court accepts the defendant's guilty plea, there will be no trial.

## III. NATURE OF THE CHARGES

**A. Elements of the Crime.** The elements of the crime of misbranding, in violation of Title 21 U.S.C. §§ 331(a) and 333(a)(1), as charged in Count One, are as follows:

1. The article must be a food, drug, device or cosmetic;

2. The article was misbranded; and

3. The defendant, as a responsible party, introduced and delivered for introduction into interstate commerce the misbranded article.

**B. Factual Basis.** If this matter were to proceed to trial, the government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

ROZA SAUL was a co-owner of Saul Farms, marketing as Bliss Seeds LLC. Saul Farms was located in Bliss, Idaho and consisted of approximately 180 acres total of farm land and grew alfalfa seed, malting barley, corn seed, teff seed, and beans. As the co-owner of Saul Farms, ROZA SAUL had responsibility and authority to prevent or correct a violation of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 301 *et seq*); as such, ROZA SAUL is strictly liable for a misdemeanor criminal violation, regardless of the extent of her knowledge of the violation.

The Organic Foods Production Act of 1990, 7 U.S.C. §§ 6501-6522 (the "Act"), and its implementing regulations, 7 C.F.R. Part 205 (the "National Organic Program"), regulated the organic agriculture industry. Under the Act, to be sold or labeled as organic, an agricultural product generally (i) must have been produced and handled without the use of synthetic chemicals, (ii) must not have been produced on land to which any prohibited substances, including synthetic chemicals, have been applied during the preceding three years, and (iii) must have been produced and handled in compliance with an appropriate organic plan. Also, under the

Act, an entity that intended to sell or label agricultural products as organic first had to be certified as an organic producer or handler according to the provisions of the Act. To be certified, the producer or handler annually had to submit an application for certification to an accredited certifying agent and permit an on-site inspection by the accredited certifying agent. The USDA accredited the Idaho State Department of Agriculture and Nature's International Certification Services as certifying agents.

From 2010 through 2015, Saul Farms annually applied to the Idaho State Department of Agriculture and Nature's International Certification Services for organic certifications to produce and handle organic alfalfa seeds on Saul Farms.

Each year from 2010 through 2015, the Idaho State Department of Agriculture and Nature's International Certification Services issued Saul Farms a USDA certification as a producer and handler of organic alfalfa seed.

During 2010 to 2015, organic alfalfa seed sold for more than one dollar more per pound than conventional, non-organic alfalfa seed.

In 2010, Saul Farms purchased approximately 66,403 pounds of conventional, non-organic alfalfa seeds from Andrews Seed, Quarter Circle J Farms, McClintick Farms, and United Seed Services. Using Saul Farms' USDA organic certification, Saul Farms misbranded the approximate 66,403 pounds of conventional, non-organic alfalfa seed as "organic" alfalfa seed, and sold it to customers Albert Lea, Kings Agriseeds, Blue River Hybrid, Byron Seeds, and Foundation Organic, through interstate shipments, at the higher organic price for approximately $182,000.

In 2011, Saul Farms purchased approximately 304,891 pounds of conventional, non-organic alfalfa seeds from Andrews Seed, Quarter Circle J Farms, McClintick Farms, and United Seed Services. Using Saul Farms' USDA organic certification, Saul Farms misbranded the

approximate 304,891 pounds of conventional, non-organic alfalfa seed as "organic" alfalfa seed, and sold it to customers Albert Lea, Kings Agriseeds, Blue River Hybrid, Byron Seeds, and Foundation Organic, through interstate shipments, at the higher organic price for approximately $891,661.

In 2012, Saul Farms purchased approximately 438,288 pounds of conventional, non-organic alfalfa seeds from Andrews Seed, Quarter Circle J Farms, McClintick Farms, and United Seed Services. Using Saul Farms' USDA organic certification, Saul Farms misbranded the approximate 438,288 pounds of conventional, non-organic alfalfa seed as "organic" alfalfa seed, and sold it to customers Albert Lea, Kings Agriseeds, Blue River Hybrid, Byron Seeds, and Foundation Organic, through interstate shipments, at the higher organic price for approximately $1,910,583.

In 2013, Saul Farms purchased approximately 545,182 pounds of conventional, non-organic alfalfa seeds from Andrews Seed, Quarter Circle J Farms, McClintick Farms, and United Seed Services. Using Saul Farms' USDA organic certification, Saul Farms misbranded the approximate 545,182 pounds of conventional, non-organic alfalfa seed as "organic" alfalfa seed, and sold it to customers Albert Lea, Kings Agriseeds, Blue River Hybrid, Byron Seeds, and Foundation Organic, through interstate shipments, at the higher organic price for approximately $1,538,763.

In 2014, Saul Farms purchased approximately 447,218 pounds of conventional, non-organic alfalfa seeds from Andrews Seed, Quarter Circle J Farms, McClintick Farms, and United Seed Services. Using Saul Farms' USDA organic certification, Saul Farms misbranded the approximate 447,218 pounds of conventional, non-organic alfalfa seeds as "organic" alfalfa seed, and sold it to customers Albert Lea, Kings Agriseeds, Blue River Hybrid, Byron Seeds, and

Foundation Organic, through interstate shipments, at the higher organic price for approximately $1,645,910.

For the first nine months of 2015, Saul Farms purchased approximately 334,371 pounds of conventional, non-organic alfalfa seeds from Andrews Seed, Quarter Circle J Farms, McClintick Farms, and United Seed Services. Using Saul Farms' USDA organic certification, Saul Farms misbranded the approximate 334,371 pounds of conventional, non-organic alfalfa seeds as "organic" alfalfa seed, and sold it to customers Albert Lea, Kings Agriseeds, Blue River Hybrid, Byron Seeds, and Foundation Organic, through interstate shipments, at the higher organic price for approximately $921,520.

As a result of Saul Farms' sale of conventional, non-organic alfalfa seed as "organic" alfalfa seed, customers Albert Lea, Kings Agriseeds, Blue River Hybrid, Byron Seeds, and Foundation Organic paid higher organic alfalfa seed prices and thereby were defrauded of $1,903,727.

On or about February 23, 2015, Saul Farms delivered to customer Joseph Danzinger, via interstate shipment from Idaho to Wisconsin, alfalfa seeds misbranded as "organic." On February 12, 2016, a sample from this shipment tested positive for the presence of fungicides and pesticides.

## IV.   SENTENCING FACTORS

A.    **Penalties.** A violation of Title 21 U.S.C. §§ 331(a) and 333(a)(1), as charged in Count One, is punishable by:

1.    a term of imprisonment of one year;

2.    a term of supervised release of not more than one year;

3.    probation of up to five years;

4.    a maximum fine of $1,000; and

5.    a special assessment of $25.

B.    **Supervised Release.** The court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime(s) to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

C.    **Fines and Costs.** The court may impose a fine. No agreement exists as to the amount of the fine. The court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

D.    **Special Assessment.** The defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724.

E.    **Restitution.** In addition to any forfeiture, fine, or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offense pursuant to any applicable statute. The defendant agrees to pay restitution in the sum of $1,903,727. The defendant agrees that all monetary penalties imposed by the court, including restitution, will be due immediately and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the court is merely a minimum schedule of payments and neither the only method, nor a limitation on the methods, available to the government to enforce the judgment, unless the court specifically states otherwise. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether

the defendant has accepted responsibility under the United States sentencing guidelines ("USSG")
§3E1.1.

F.    **Forfeiture.** Incorporated by reference herein, and filed in connection with this
plea agreement, is the defendant's Consent to Forfeiture.

V.    **UNITED STATES SENTENCING GUIDELINES**

A.    **Application of Sentencing Guidelines.** The court must consider the USSG in
determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the court
may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The court is not a party to this agreement. The agreement does not bind the court's
determination of the USSG range. The court will identify the factors that will determine the
sentencing range under the USSG. While the court may take the defendant's cooperation, if any,
and the recommendations of the parties into account, the court has complete discretion to impose
any lawful sentence, including the maximum sentence possible.

Recognizing that the court is not bound by this agreement, the parties agree to the
recommendations and requests set forth below.

B.    **Sentencing Guidelines Recommendations and Requests.**

1.    Government's statements at sentencing. The government reserves the right
to fully allocute at sentencing regarding any sentencing recommendation and to rely on any
information in support of its recommendation regardless of whether the information is contained
in the plea agreement or the presentence report.

2.    Acceptance of Responsibility. If the defendant clearly accepts
responsibility for the offense, the defendant will be entitled to a reduction of two levels in the
combined adjusted offense level, under USSG § 3E1.1(a). The government will move for an
additional one-level reduction in the combined offense level under § 3E1.1(b) if the following

conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the government will withdraw or decline to make such a recommendation.

3.    Guidelines Calculations. The parties agree that Counts One and Two group together (*see* § 3D1.2(d)) and the following USSG calculations apply:

| | | | |
|---|---|---|---|
| a. | § 2N2.1(a): Base Offense Level | | 6 |
| b. | § 2N2.1(c): No cross reference for fraud or commission in furtherance of another offense applies | | 0 |
| c. | Adjusted Offense Level | | = 6 |

4.    Amount of Loss. The parties agree that the amount of loss is $1,903,727.

5.    Downward Departure or Variance Request by defendant. Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

## VI.    COOPERATION IN TAX PROCEEDINGS

The defendant agrees to cooperate with the Internal Revenue Service ("IRS") in its civil examination, determination, assessment, and collection of income taxes relating to her tax returns and any related corporate/entity tax returns for all periods for tax years 2010 through 2014, and further agrees not to conceal, transfer, or dissipate funds or property that could be used to satisfy

such taxes penalties, and interest. The defendant agrees to provide the IRS any documentation in the defendant's possession and/or control requested by the IRS in connection with its civil examination, determination, assessment, and collection of such taxes prior to sentencing.

The defendant also agrees to work diligently with the IRS to resolve the liability for all taxes, interest, and penalties due and owing to the IRS, including all taxes, interest, and penalties on her individual and any related corporate/entity liabilities for the tax years 2010 through 2014. Nothing in this agreement shall limit the IRS in its civil determination, assessment, and collection of any taxes, interest, and/or penalties that the defendant may owe.

The defendant agrees to repatriate any funds or assets held in any foreign country or outside the United States as necessary to pay her tax liability and restitution.

The defendant agrees that she is liable for the penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663 on any additional tax as identified by civil examination for tax years 2010 through 2014. Defendant agrees that a civil penalty under 26 U.S.C. § 6663 may be assessed against her.

The defendant agrees to sign statute extensions (Form 872) with the IRS, prior to the time of sentencing, for tax years 2010 through 2014, if requested.

The defendant agrees that nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest and/or penalties due from the defendant for the time periods not covered by this agreement.

The defendant agrees that nothing in this agreement shall preclude or bar the Internal Revenue Service from the assessment and/or collection of any additional tax liability, including interest and penalties, determined to be due and owing from the defendant by the Internal Revenue Service for 2010 through 2014.

The defendant further agrees that any evidence, including statements and documents, provided to the United States by the defendant pursuant to a Proffer Agreement, without any limitations, can be utilized by the United States in its civil examination, determination, assessment, and collection of income taxes related to her income tax returns and any related corporate/entity tax returns, or any other civil proceeding. The United States does not deem this, in any way, to be a waiver of the defendant's attorney-client privilege with respect to any attorney.

The defendant agrees to give up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

The defendant agrees that any statements made by her to the IRS and/or in this agreement shall be admissible against the defendant without any limitation in any civil or criminal proceeding and the defendant stipulates to the authenticity and admissibility, in any civil or criminal proceeding, of any documentation provided by the defendant to the IRS. The defendant hereby waives any protection afforded by Rule 410 of the Federal Rules of Evidence and Rule II (f) of the Federal Rules of Criminal Procedure with regard to any such statements and documentation. In the event that the defendant withdraws from this agreement prior to pleading guilty and/or fails to fully comply with any of the terms of this agreement, the United States will, at its option, be released from its obligations under this agreement, but under no circumstances shall the defendant be released from the agreements and waivers made by her in this and the preceding paragraphs

## VII.   WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A.   **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution.

The defendant acknowledges that this waiver shall result in the dismissal of any direct appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and will allow the government to withdraw from the agreement and take other remedial action.

If the defendant believes the government has not fulfilled its obligations under this agreement, the defendant will object at the time of sentencing; further objections are waived.

B.   **Exceptions:**

1.   **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

      a.   the sentence imposed by the court exceeds the statutory maximum;

      b.   the court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

      c.   the court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the court.

The defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

2.   **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the defendant shall retain the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

## VIII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States probation office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this agreement and relieves the government of its obligations in this agreement. Such failure and response by the government will not, however, constitute grounds for withdrawing the plea of guilty unless the government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1.

## IX.   DISCLOSING FINANCIAL INFORMATION

The defendant agrees to disclose all of the defendant's assets and sources of income to the government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest. The defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the government. The defendant agrees truthfully to complete a personal financial statement within fourteen days from the date the defendant signs this agreement. If the government provides a financial statement to be completed, the defendant agrees to complete the financial statement truthfully and accurately within fourteen days from the date the defendant signs this agreement or the date the financial statement is provided to the defendant or counsel, whichever is later. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k) within seven days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements as required herein, may constitute failure to accept responsibility under USSG § 3E1.1, as well as other things.

The defendant authorizes the government: (a) to obtain a credit report on the defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain financial records related to the defendant.

Before sentencing, defendant agrees not to dissipate any assets without the consent of both the government's financial litigation unit and the asset forfeiture unit. If any assets are sold, any sale proceeds received from sale of assets will be deposited with the clerk and, upon sentencing, paid toward any monetary penalties due as ordered in the judgment.

## X.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this agreement or the guilty plea, regardless of the court's actions.

## XI.   CONSEQUENCES OF VIOLATING AGREEMENT

A.   **Government's Options.** If the defendant fails to keep any promise in this agreement or commits a new crime, the government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. In addition, if the government determines after sentence is imposed that the defendant's breach of the agreement warrants further prosecution, the government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the government determines that a breach warrants prosecution before sentencing, it may withdraw from the agreement in its entirety.

The government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea(s) made pursuant to this agreement.

B.     **Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the defendant does not enter an acceptable plea, the government will move to continue the trial now set to allow the government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XII.   MISCELLANEOUS

A.     **No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the attorney for the defendant. This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than that specified as the government in this agreement (i.e., the United States Attorney's Office for the District of Idaho). The government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the request of defendant' or counsel.

B.     **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this agreement no later than 5:00 p.m. on March 11, 2016.

C.     **Risk of Removal from the United States.** The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however. While arguments may be made in such a proceeding, it is virtually certain that defendant will be removed from the United States. The defendant nevertheless affirms that the defendant wants to plead guilty.

## XIII.   UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the government. Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_____          _____3_/_11_/_1_6_____
RAYMOND E. PATRICCO                          Date
Assistant United States Attorney

## XIV.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the government,

Plea Agreement                              15                       Rev. November 2015 (General)

including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including enter a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____          _____3/11/16_____
ROZA SAUL                                 Date
Defendant

I have read this agreement and have discussed the contents of the agreement with my client. The agreement accurately sets forth the entirety of the agreement. I have conveyed all written offers from the government to the defendant pursuant to *Missouri v. Frye*, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

**Plea Agreement**                    16                    Rev. November 2015 (General)

Ed Guerricabeitia
Attorney for the defendant

_3/11/16_
Date